UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LARRY BALLANGER ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 1:11-CV-107 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| CITY OF CHATTANOOGA, and CRISTINA ) | |
| HENDERSON, personally and individually, ) | |
| and jointly and severally ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendants City of Chattanooga ("City") and Officer Cristina Henderson ("Officer Henderson") (collectively, "Defendants") (Court File No. 17). Plaintiff Larry Ballanger has responded (Court File No. 25), and Defendants have replied (Court File No. 27). In the motion, Defendants ask the Court to dismiss all federal claims on the merits, and dismiss without prejudice the supplemental state claims. For the following reasons, the Court will **GRANT** the motion for summary judgment (Court File No. 17).

**I.    FACTS**

Plaintiff is a sixty-three-year-old African-American male and is a resident of Hamilton County, Tennessee (Court File No. 26-1, ["Ballanger Aff."], ¶¶ 1, 24). He was in his car, waiting at a red traffic light on Lee Highway, Chattanooga, Tennessee, in front of Sam's Club, when the

events leading to this suit occurred (*id.* at ¶ 3).[1]

Officer Henderson was in her car ahead of Plaintiff, also stopped at the same light. When the light turned green, Officer Henderson did not move as cars in the other lane began to pass (Court File No. 1, ["Compl."], ¶¶ 6-8). Plaintiff sounded his horn twice to alert the officer the light had changed (*id.* at ¶ 9). After this, Officer Henderson pulled over into the right lane, moved back into the left lane behind Plaintiff, and followed him for 2.1 miles to Greenway Drive (*id.* at ¶¶ 10-11). As Plaintiff turned into the entrance of Walmart, Officer Henderson engaged her blue lights and Plaintiff pulled over into a parking lot (*id.* at ¶ 14). Officer Henderson approached Plaintiff in his car and said to him, "You shouldn't be honking at me." (*id.* at ¶ 16). Officer Henderson then cited Plaintiff for a noise violation and blocking/obstructing traffic (*id.* at ¶ 18).

Plaintiff refused to sign the citations given him by Officer Henderson. Upon Plaintiff's refusal to sign the citations, Officer Henderson issued a citation for disorderly conduct, which Plaintiff also refused to sign (*id.* at ¶ 20). Officer Henderson asked Plaintiff to step out of the car, and he complied (*id.* at ¶ 21). Plaintiff continued to refuse to sign the citations, claiming he had done nothing wrong, and that the officer was "making up things" (*id.* at ¶ 23). The officer became agitated at this and told Plaintiff to turn to be handcuffed. Plaintiff alleges he was handcuffed too tightly and lost sensation in his hands (*id.* at ¶¶ 24-25). At this time, Officer John Tolson arrived on the scene to assist Officer Henderson, and to encourage Plaintiff to sign the citations, notifying Plaintiff that signing the citations did not represent an admission of guilt (Court File No. 21, ["Tolson Aff."], ¶ 7). Additionally, and at Plaintiff's request, Officer Tolson checked Plaintiff's

---

[1] For purposes of summary judgment, Plaintiff's version of the facts as set forth in the complaint are taken to be true, except when otherwise noted.

2

handcuffs, determined they were not too tight because there was sufficient space to insert two fingers into the handcuffs, but nonetheless loosened the handcuffs and readjusted their position on Plaintiff's wrists (*id.*, ¶ 6). After a final refusal by Plaintiff to sign the citations, Officer Henderson transported Plaintiff to jail (Compl., ¶ 28). At jail, Officer Henderson ordered Plaintiff out of the patrol car, saying, "If I have to go get other officers to help you out of the car you are going to wish you had gotten out on your own" (*id.* at ¶ 30).

Plaintiff had a preliminary hearing on his charges on July 7, 2010, and a Hamilton County Grand Jury returned True Bills of indictment on all three charges on August 18, 2010 (Court File No. 23, p. 6). As a result of the charges, Plaintiff appeared before the Hamilton County General Sessions Court and Criminal Court on several occasions (*id.* at ¶ 32). Plaintiff also spent time in jail, and allegedly lost income, suffered shame and humiliation, and endured physical pain including loss of functioning in his hand due to being handcuffed. (*id.* at ¶ 31). The Hamilton County Criminal Court dismissed the charges against Plaintiff in January 2011 (*id.* at ¶ 33).

Plaintiff has sued Defendants on a number of claims. He alleges: (1) a violation of his civil rights guaranteed by the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 by all Defendants; (2) a violation of 42 U.S.C. § 1981 by all Defendants; and (3) various state law torts, including battery, false arrest, false imprisonment, malicious prosecution, abuse of process, negligence, and intentional infliction of emotional distress. Defendants have moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows, based on the materials in the record, "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

#### A. § 1983 Claims

Plaintiff's complaint alleges § 1983 violations of his Fourth and Fourteenth Amendment

4

rights by the City and Officer Henderson. Plaintiff argues he was denied equal protection under the law due to racial discrimination from Officer Henderson. He further argues his constitutional rights to be free from unreasonable search, seizure, and arrest were violated. Accordingly, Plaintiff believes he is entitled to damages pursuant to § 1983.

To state a general claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Similarly, a § 1983 suit against a municipality involves a two-prong inquiry. *Cash v. Hamilton Cnty. Dep't of Adult Prob.,* 388 F.3d 539, 542 (6th Cir. 2004). The court must determine: 1) whether the plaintiff has been deprived of a constitutional right; and 2) whether the municipality is responsible for the violation. *Id*.

A municipality cannot be liable under a *respondeat superior* theory for § 1983 violations. *Id*. Rather, municipalities are liable when they "have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id*. (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Additionally, even absent a policy "officially adopted" by a municipality's officers, a § 1983 plaintiff "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation."

5

*Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

Failure to adequately train or supervise officers can rise to the level of a *de facto* unconstitutional policy or custom if a plaintiff can show: "(1) the training or supervision [] was inadequate to the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Loggins v. Franklin Cnty.*, 218 F. App'x 466, 473 (6th Cir. 2007) (quotation omitted).

### 1. § 1983 Claim Against the City

The City argues it is entitled to summary judgment on Plaintiff's § 1983 claim because, regardless of whether Plaintiff even suffered a constitutional injury, Plaintiff cannot show the City had an official unconstitutional policy or custom which was responsible for the injury, or that the City was "deliberately indifferent" to the rights of Plaintiff and similarly-situated individuals. The Court agrees.

Plaintiff has produced no evidence of any unconstitutional "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the City's officers which led to an alleged violation of his constitutional rights. *See Praprotnik*, 485 U.S. at 121. In contrast, the City has produced several affidavits outlining the officially adopted policies on use of force and arrest

6

in Chattanooga (*See* Court Files No. 18-20, ["Affs. Of Lon Eilders, Danna Vaughn, Susan Blaine"]). These affidavits indicate the City did not have an official policy of allowing its police officers to use unlawful force or to arrest individuals without probable cause.

Likewise, Plaintiff has presented no evidence of an "unofficial" policy that, although not formally adopted by City officers, is a "widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." *See Monell*, 436 U.S. at 691. Plaintiff alleges the City has a custom of "standing behind an officer's discretion to manufacture facts and testify falsely to facts" (Court File No. 26 ["Pl. Mem. Opp'n Summ. J."], p. 11). However, this is mere assertion; Plaintiff provides no factual support whatsoever suggesting the City has such a "custom or usage" of standing behind an officer's manufacturing of facts.

Similarly, Plaintiff has failed to produce evidence showing a *de facto* unconstitutional policy or custom arising from the City's failure to adequately train or supervise its officers. To demonstrate a § 1983 violation based upon failure to train, Plaintiff must show the City was deliberately indifferent to the rights of similarly situated Plaintiffs. To prove deliberate indifference, "[a plaintiff] must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Here, Plaintiff cannot point to any instance of deliberate indifference on the part of the City. Once again, Defendant City provides affidavits and records of the Training Division that outline proper uniform training procedures for officers. The City further avers that officers who fail to meet the standards for proper arrest procedures are disciplined. The City finally indicates all training provided to Officer Henderson "met or exceeded" training requirements of the Tennessee Post

Commission (Vaughn Aff., ¶ 2). There being no other evidence offered by Plaintiff to show the City was deliberately indifferent to the rights of Plaintiff and similarly-situated individuals, the Court finds Plaintiff cannot establish § 1983 liability under a failure to train theory.

Since Plaintiff can show neither an unconstitutional policy or custom, nor actionable failure to train or supervise its officers, the Court determines the City is entitled to summary judgment on Plaintiff's § 1983 claim.

### 2. § 1983 Claim Against Officer Henderson

#### a. Traffic Stop and Arrest

Plaintiff alleges his Fourth and Fourteenth Amendment rights were violated by the stop and subsequent arrest conducted by Officer Henderson. Officer Henderson raises a qualified immunity defense. The qualified immunity doctrine shields government officials performing discretionary actions from civil damages liability as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federally secured right, "qualified immunity will apply if an objective reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this case, it is not necessary to engage in full-blown qualified immunity analysis, because Plaintiff cannot show Officer Henderson violated his constitutional rights. It is clear Officer Henderson was required by Tennessee law to arrest Plaintiff and transport him to jail after he refused

8

to sign the citations.[2] Plaintiff merely contests the probable cause upon which Officer Henderson relied in initiating the traffic stop. For Plaintiff to prevail, then, the Court would have to conclude Officer Henderson did not have probable cause to stop Plaintiff and issue the subsequent citations, and that she knew this. However, it is impossible for Plaintiff to make this showing because the grand jury's return of true bills of indictment against Plaintiff establishes, as a matter of law, that there *was* probable cause to stop Plaintiff and issue the citations.

Federal courts are required to give to state-court judgments the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984). In Tennessee, a finding of probable cause in general sessions court does not *categorically* "preclude a finding of lack of probable cause in a subsequent civil action for malicious prosecution." *Yant v. Arrow Exterminators, Inc.*, 1999 WL 43239 at *3 (Tenn. Ct. App. Feb. 1, 1999). However, when testimony sufficient to establish probable cause is given in a judicial setting allowing cross-examination, the trial court hearing a subsequent malicious prosecution action is entitled to find that probable cause has been established as a matter of law. *Id.* Consistent with this, the Sixth Circuit has held would-be plaintiffs are collaterally estopped from contesting probable cause determinations following Tennessee court preliminary hearings, since such hearings afford an accused an opportunity to contest probable cause. *See Smith v. Buttry,* 111 F. App'x 372, 374 (6th Cir. Sept. 7, 2004); *Day v. Ingle's Mkts.*, No. 2:01-CV-325, 2006 WL 239290 at *3 (E.D. Tenn. Jan. 25, 2006) (holding allegation and *proof* that determination

---

[2]This is required by Tennessee Code Annotated § 7-63-104 which reads, in part, "In the event the offender refuses to sign the agreement to appear in court and to waive the issuance and service upon the offender of a warrant, then it shall be the duty of the officer, in whose presence the offense is committed, forthwith to place the offender under arrest and take the offender before the proper authority..."

of probable cause was based upon false statements is required for relitigation of probable cause issue in malicious prosecution action) (emphasis added).

Plaintiff does not allege in his complaint that Officer Henderson or any other officer provided false testimony at the preliminary hearing or before the grand jury, nor does he provide any substantive evidence relating to the testimony given at the preliminary hearing or before the grand jury that would allow the Court to find the determination of probable cause was based upon false statements. *See Day*, 2006 WL 239290 at *3. Moreover, there is nothing in the record to indicate Plaintiff was not afforded an opportunity to contest or test by cross-examination the testimony given by Officer Henderson in the preliminary hearing tending to show probable cause. *See Smith*, 111 F. App'x at 374. Plaintiff has merely provided, by affidavit, the vague, nondescript allegation that Officer Henderson provided at the preliminary hearing "an account of our exchange different from what actually occurred" (Ballanger Aff. ¶ 57). This falls far short of "proof" that the state court determination of probable cause was based upon false and fraudulent statements. Consequently, the Court concludes the grand jury's return of true bills of indictment, following a preliminary hearing in which Plaintiff would have had the opportunity to contest probable cause, collaterally estops Plaintiff from challenging probable cause here. Because there was probable cause to initiate the traffic stop, and Officer Henderson was required by law to arrest Plaintiff upon his refusal to sign the citations, it cannot be said Officer Henderson violated Plaintiff's constitutional rights. Accordingly, because there was no constitutional violation, the Court determines Officer Henderson is entitled to summary judgment with respect to the § 1983 claim arising from the stop and arrest.

### b. Excessive Force in Handcuffing

Finally, the Court addresses Plaintiff's claim of excessive force in handcuffing. "The Fourth

10

Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citation omitted). However, "[n]ot all allegations of tight handcuffing . . . amount to excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005); *see also Meadows v. Thomas*, 117 F. App'x 397 (6th Cir. 2004). "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Morrison*, 583 F.3d at 401 (citation and internal quotation marks omitted). The Sixth Circuit requires evidence of an injury-in-fact. *Lyons,* 417 F.3d at 575-76 ("In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing . . . ."). This requirement ensures every instance of handcuffing – an unpleasant experience by design – does not require recourse to a jury. *See Nemeckay v. Rule*, 894 F. Supp. 310, 315 (E.D. Mich. 1995) ("If every case in which a person taken into custody with handcuffs were to give rise to a question of constitutional dimension requiring factual inquiry, literally every such case would require submission to the fact-finder.").

In the present case, Plaintiff's excessive force claim with respect to his handcuffing must fail because the evidence does not demonstrate he was handcuffed excessively and unnecessarily tightly, that Officer Henderson ignored his pleas that the handcuffs were too tight, or that Plaintiff suffered any physical injury. Officer Henderson indicates she handcuffed Plaintiff in accordance with standard operating procedure of Chattanooga Police Department (Henderson Aff., ¶ 11). Furthermore, the evidence does not show Officer Henderson or Officer Tolson "ignored Plaintiff's pleas" that the handcuffs were too tight. Although both officers admit Plaintiff complained about

11

the tightness of the handcuffs, there is no evidence they ignored Plaintiff's plea. Indeed both Officer Henderson and Officer Tolson checked Plaintiff's handcuffs for sufficient space, and it is undisputed Officer Tolson loosened the cuffs in response to Plaintiff's requests (Henderson Aff., ¶¶ 11-12) (Tolson Aff., ¶ 6). There is no evidence or allegation Plaintiff renewed his request to have the cuffs loosened after Officer Tolson loosened them. In the absence of such a renewed request, "it is fair to ask how a reasonable officer should know that a problem [persisted]" after the adjustment. *See Lyons*, 417 F.3d at 576. The facts, even viewed favorably to Plaintiff, simply do not amount to Officer Henderson's "ignoring" Plaintiff's "pleas." She either personally, or with the assistance of her colleague, responded to Plaintiff's complaint his handcuffs were properly secured, and there is no indication Plaintiff renewed his complaint following adjustment of the cuffs. Finally, Plaintiff has presented no evidence he suffered physical injury as a result of being handcuffed. Despite alleging his hands required medical care, he provides no medical records, and is extremely vague about the nature of any injury to his hands.[3] Accordingly, the Court concludes Plaintiff has failed to raise a genuine issue of material fact as to the excessive force in handcuffing claim, and Officer Henderson is entitled to summary judgment.

**B. § 1981 Claims**

Plaintiff also alleges Defendant violated his right to the "full and equal benefit of the law" under 42 U.S.C.A. § 1981. Plaintiff claims he meets the requirements for a § 1981 action because he is a minority and Defendant Henderson discriminated against him on the basis of race. The Court

---

[3]Plaintiff's affidavit states he had pre-existing carpal tunnel syndrome in his hands (Ballanger Aff. ¶ 34), and it is impossible to determine from the brief and affidavit which of Plaintiff's hand problems, if any, are attributable to the handcuffing rather than his prior condition.

determines Plaintiff has not stated a proper § 1981 claim, and Defendants are therefore entitled to summary judgment.

To prevail on a § 1981 claim, Plaintiff must show he is a member of a racial minority, Defendant discriminated against him intentionally on the basis of race, and the discrimination was in a category fairly covered by the statute. *See Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). The statute covers the right to "make and enforce contracts, to sue, be parties, [and] give evidence." 42 U.S.C. § 1981; *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship . . . ."). Here, it is true Plaintiff is a racial minority. However, Plaintiff has put forward no evidence at all to suggest he was discriminated against on the basis of his race – he simply, conclusively, and erroneously claims discrimination can be inferred because of the fact he is a racial minority.[3] Even more significantly, even if Plaintiff had put forward evidence to create a genuine issue of fact as to discrimination, he cannot show such discrimination was in a category fairly covered by § 1981. Plaintiff has not alleged a violation of his rights to contract, to sue, to be a party, or other § 1981-enumerated rights. Therefore Plaintiff has not made out a *prima facie* § 1981 case against either the

---

[3]The same evidentiary standard is employed to show intentional discrimination under § 1981 as under Title VII. *St. John v. Bosley, Inc.*, No. 11-4085, 2012 WL 2086834, *3 (6th Cir. June 8, 2012) ("The standards for discrimination under Title VII are equally applicable to claims under section 1981. To demonstrate a *prima facia* case under that framework, [Plaintiff] must show that: (1) he belongs to a protected class; (2) he sought to make a contract for services ordinarily provided by the defendant; and (3) he was denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not or he was treated in such a hostile manner that a reasonable person would find it objectively discriminatory.") (citations omitted). Here, Plaintiff has put forward on evidence which could establish a *prima facie* case of § 1981 discrimination, other than being part of a protected class.

13

City or Officer Henderson, and Defendants are entitled to summary judgment on Plaintiff's § 1981 claims.

### C. State Law Claims

Plaintiff asserts various state law claims against Defendants.[4] The Court finds dismissal without prejudice is proper for these claims. As state law claims brought in a federal-question case, the claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary and district courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the Court is dismissing all claims over which it has original jurisdiction, thus the third rationale of § 1367(c) applies. The Sixth Circuit "has expressed a strong policy in favor of dismissing" state law claims when all federal claims over which the district court had original jurisdiction have been dismissed. *Staggs v. Ausdenmoore*, No. 92-3172, 1993 WL 131942, *5 (6th Cir. April 27, 1993). This Court has in the past explained the State of Tennessee "has a strong interest in keeping governmental tort claims 'in house.'" *Wells v. City of Chattanooga*, No. 1:09-CV-219, 2011 WL 2749563, *7 (E.D. Tenn. July 14, 2011). Accordingly, the Court will dismiss

---

[4]These claims are: battery, false arrest, false imprisonment, malicious prosecution, abuse of process, negligence, and intentional infliction of emotional distress.

14

without prejudice all state law claims against Defendants.

IV. **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Defendants' motion as follows (Court File No. 17): the Court will **GRANT** summary judgment for Defendants on Plaintiff's § 1981 and § 1983 claims, and will **DISMISS WITHOUT PREJUDICE** all state law claims.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**